Erwin PERZY, Plaintiff,

v.

INTERCARGO CORPORATION,
etc., Defendant.

No. 92 C 1479.

United States District Court,
N.D. Illinois, E.D.

July 20, 1993.

Paul J. Kozacky, Jillisa Brittan, McDermott, Will & Emery, Chicago, IL, for plaintiff.

Warren J. Marwedel, Michael C. Neubauer, Keck, Mahin & Cate, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This Court's July 7, 1993 memorandum opinion and order (the "Opinion," 827 F.Supp. 1365)[1] entered summary judgment as to liability in favor of Erwin Perzy ("Perzy") and against Intercargo Corporation ("Intercargo") in this action to recover under Intercargo's marine insurance Policy and the Certificate issued by Tansey–Riggs under Intercargo's authority. However, Opinion at 1378 explained that further submissions would be needed from the parties for this Court to determine the amount of Intercargo's liability. Each litigant has now filed a supplemental memorandum to that end.

As appeared to be true when the Opinion issued, neither side has the matter of damages entirely right. Nor was the tentative suggestion that this Court outlined in the Opinion exactly correct. This opinion will therefore sort out the respective contentions to arrive at the answer.

It will be recalled that Policy ¶ 7 set out two alternative methods of valuation of the insured property (emphasis added):

Value at the amount of invoice, including all charges therein, and including prepaid and/or advanced and/or guaranteed freight if any, plus 10% *or* at amount declared prior to shipment and prior to any known or reported loss or accident. Foreign currency to be converted into U.S. dollars at the rate of exchange current in New York.

Perzy urges that under that language the Policy is a "valued policy" under which the

---

1. This opinion will assume familiarity with the Opinion and will therefore use (without redefining) the same defined terms that were employed there. Citations to the Opinion will simply take the form "Opinion at ——."

parties can agree to a stipulated amount of coverage, which then controls regardless of the property's actual value or market price (Perzy Mem. 2–3, citing a number of authorities). For its part Intercargo says that "the 'amount declared' method is used only when there is no invoice" (Intercargo Mem. 4, citing *nothing* in support of that ipse dixit).

Intercargo is of course wrong: Nothing in the Policy's language suggests that the two alternative valuation provisions are of anything other than equal status, either of them being available whenever the parties contract in accordance with those particular terms. But Perzy is wrong too, not in setting out the legal doctrine of the "valued policy" (under which if the parties here had really agreed to adopt a fixed dollar amount of coverage, the authorities cited by Perzy would make that agreement binding), but rather because Wregg (the person who ordered the insurance coverage) had specifically sought to contract with relation to the invoice-amount-plus-other-charges alternative instead.

■ There is no question that Tansey–Riggs mistakenly based the amount of insurance on the value of all 20 pallets of Schneekugeln that Perzy originally shipped from Austria, rather than on the 13 unsold pallets that Wregg was returning to Perzy in accordance with their agreement. Before this Court turns to the amount of error introduced by that mistake, however, it must first address Perzy's argument that Intercargo's misconduct blocks its resort to the equitable remedy of reformation of the contract.[2] Opinion at 1377–78 rejected Perzy's request

for an award of attorneys' fees under 215 ILCS 5/155(1) because of Intercargo's inequitable conduct (in part that conduct consisted of its Vice President Lee Thorson's improper effort to alter the coverage under the Policy *after* Perzy's claim had already been filed). This Court based that rejection on the fact that Intercargo had separate good faith grounds (though they were ultimately unsuccessful) for denying Perzy's claim. Even though it is a much closer question whether Intercargo's unclean hands (manifested by Thorson's conduct) should bar Intercargo's equitable remedy of reformation, on balance this Court has determined that the issue should be resolved in favor of Intercargo.[3]

Accordingly the question becomes that of quantifying the reformation of the stated insured value of $27,839 to reflect accurately the Policy formula of "value at the amount of invoice, including all charges therein, and including prepaid and/or advanced and/or guaranteed freight, if any, plus 10%." Further review of that issue has convinced this Court that the appropriate amount of Perzy's recovery is $20,377.59 rather than the slightly larger amount tentatively suggested in Opinion at 1376. Here is the breakdown:

1. Wregg's instructions to Tansey–Riggs identified the cost of the 13 pallets at 150,452 Austrian Schillings plus other costs of 18,620 Schillings (Wregg Dep. 35–36).[4] At the agreed-upon conversion rate of .0954, that total of 169,072 Schillings

---

2. Contract reformation is the correct label for the relief that is sought by Intercargo. There is no question but that the contract between the parties—the Certificate issued by Tansey–Riggs—unequivocally calls for Intercargo's payment of the $27,839 amount for which the Certificate was written. Intercargo asks to have that contract reformed by revising the amount of coverage on grounds of mutual mistake (Tansey–Riggs having acted for all the parties in preparing the Certificate).

3. As before, this Court holds no brief for Intercargo's conduct in that respect (or, for that matter, for a number of Intercargo's untenable positions taken in this litigation). But barring reformation of the excessive amount of coverage

would be a punishment disproportionate to Intercargo's "crime."

4. That latter figure was mistakenly referred to by Wregg as "packing," a term that created understandable confusion on Perzy's part when his deposition was taken and he was asked about it (Perzy Dep. 59–60). In fact the added amount appears to represent the proportion, attributable to the 13 returned pallets, of the amount that was borne by Wregg when he received the goods to cover "freight and clearing the shipment" (Wregg Dep. 36)—presumably westbound freight charges plus customs duty. That ties in with this Court's rejection in Opinion at 1376 n. 9 of comparable costs that were borne by Perzy rather than by Wregg as sunk costs, not recoverable as part of the insured loss.

comes to $16,129.47 in United States currency.

2. Eastbound freight charges of $1,866.02 and the Tansey–Riggs fee of $460.50 also come within the Policy's coverage.

3. All those items total $18,455.99. Adding 10% to that figure brings Perzy's insurable value to $20,301.59. And to that recovery must be added 7/20 of the insurance premium of $217.14,[5] or $76.00.

Accordingly there is no genuine issue of *material* fact as to the amount of Perzy's damages, just as Opinion at 1378 found that Perzy was entitled to a judgment as to Intercargo's liability as a matter of law. Judgment is ordered to be entered in favor of Perzy and against Intercargo in the sum of $20,377.59.

---

5. Again neither party has that minor item right. It is true that Perzy cannot recoup the entire insurance premium (let alone 110% of that amount). But Intercargo is also extraordinarily nervy in arguing that Perzy, whose recovery has been diminished by reforming the insured value to provide him with less coverage than he paid for, must nonetheless bear the full insurance premium—still another instance of inattention by Intercargo's counsel to the principle that "he who seeks equity must do equity."